UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROGER MAILHOT | : | |
| | : | |
| v. | : | C.A. No. 11-263M |
| | : | |
| MICHAEL J. ASTRUE | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on June 29, 2011 seeking to reverse the decision of the Commissioner. On February 14, 2012, Plaintiff filed a Motion to Reverse with a Remand for a Rehearing of the Commissioner's Final Decision. (Document No. 9). On March 27, 2012, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 11).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent legal research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be GRANTED and that Plaintiff's Motion

to Reverse with a Remand for a Rehearing of the Commissioner's Final Decision (Document No. 9) be DENIED.

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for DIB (Tr. 96-97) and SSI (Tr. 103-110) on May 6, 2009 alleging disability since December 15, 2008. (Tr. 96, 103, 132). Plaintiff's date last insured is December 31, 2012. The applications were denied initially on August 14, 2009 (Tr. 45-48) and on reconsideration on December 21, 2009. (Tr. 52-57). On February 2, 2010, Plaintiff requested an administrative hearing. (Tr. 58-59). On January 7, 2011, a hearing was held before Administrative Law Judge Gerald Resnick (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. 16-40). The ALJ issued a decision unfavorable to Plaintiff on January 26, 2011. (Tr. 4-15). Plaintiff's claim was selected for review by the Decision Review Board. On May 2, 2011, the Decision Review Board notified Plaintiff that it had not completed its review of the ALJ's decision within the time allowed and that the ALJ's decision had become final. (Tr. 1-3). A timely appeal was then filed in this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ did not properly evaluate the opinions of Dr. McCloy and Dr. Haj-Darwish, and did not properly consider his need to use a cane.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's denial of disability benefits is supported by the record and must be affirmed.

## III.      THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the

Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.     Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.     Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. <u>Wells v. Barnhart</u>, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. <u>Seavey</u>, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. <u>Deblois v. Sec'y of Health and Human Servs.</u>, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. <u>Id.</u>

**E.    Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. <u>Seavey</u>, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). <u>Seavey</u>, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. <u>Id.</u>; <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. <u>Nguyen</u>, 172 F.3d at 36. In almost all of such cases, the

Commissioner's burden can be met only through the use of a vocational expert. <u>Heggarty</u>, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. <u>See</u> <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." <u>Nguyen</u>, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)     Treatment, other than medication, for relief of pain;

(5)     Functional restrictions; and

(6)     The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.     Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.     APPLICATION AND ANALYSIS

Plaintiff was forty-one years old on the date of the ALJ's decision.  (Tr. 96, 103).  Plaintiff completed two years of college and attained an Associate's Degree in Science, Automotive Technology (Tr. 20) who worked in the relevant past as an automotive mechanic technician, construction laborer and painter.  (Tr. 14, 137).  Plaintiff alleges disability due to back problems, scoliosis, nerve damage, bone spurs, arthritis and loss of feeling in both legs.  (Tr. 136).

Plaintiff has a history of back pain stemming from a dirt bike accident in June 2005 in which he fractured his left tibia and fibula.  (Tr. 192, 208).  He complained of constant pain in the mid and lower back, with intermittent pain radiating from the right groin throughout the right lower extremity to the heel.  (Tr. 208).  An MRI of the lumbar spine revealed an L3-L4 disc desiccation with disc bulge, osteophyte, and posterior element prominence and a moderate degree of central stenosis; a bulge at L4-L5 with posterior element prominence and moderate overall central stenosis; mild lumbar discogenic change; foraminal narrowing; and, right renal cystic lesion.  (Tr. 190).  Plaintiff's back pain was originally treated conservatively with Neurontin, epidural steroid injections and physical therapy.  (Tr. 200).

A discography of the lumbar spine performed on June 16, 2009 showed both L3-L4 and L4-L5 annular disruption with pain that was inconsistent with the pain Plaintiff reportedly experienced with ambulation.  (Tr. 407-408).  A CT scan of the lumbar spine performed the same day revealed annular tears and mild spinal stenosis at L3-L4 and L4-L5.  (Tr. 210).  At that point, Dr. Prakash Sampath, Plaintiff's treating neurosurgeon, concluded that Plaintiff had failed conservative treatment and recommended more aggressive surgical exploration.  (Tr. 215).  On June

30, 2009, Dr. Sampath performed a lumbar laminectomy with complete facetectomy in L3-L4, followed by lumbar laminectomy and partial facetectomy at L4-L5 and LS-Sl, predominantly on the right side, followed by lumbar interbody arthrodesis and fusion, as well as posterolateral arthrodesis and fusion with pedicel fixation as well as bone graft. (Tr. 222). Plaintiff was discharged in satisfactory condition on July 6, 2009. (Tr. 216).

Subsequent treatment records reveal that Plaintiff complained of moderate back pain several times a week. (Tr. 297). Physical examinations by Plaintiff's internist, Dr. Yusef Haj-Darwish, consistently showed Plaintiff's gait and station were without abnormalities; inspection and palpation of the bones, joints, and muscles was unremarkable; neurological examination was normal; and his coordination was good. (Tr. 298-299, 304, 309). A CT scan of the lumbar spine on June 8, 2010 showed only post-operative changes, mild to moderate degenerative changes, and mild central canal stenosis. (Tr. 756). EMG/nerve conduction studies of the lower extremities performed in August 2010 were unremarkable, showing no evidence of neural compression. (Tr. 743-746). At a follow-up examination with Dr. Sampath in October 2010, Plaintiff complained of back pain, but sat comfortably, had good strength in the upper and lower extremities, and had no gross evidence of myelopathy. (Tr. 746). Dr. Sampath also noted in his records that it was unclear why Plaintiff was reporting so much pain, since the nerve conduction studies were normal. Id. There was no evidence of neural impingement in Plaintiff's most recent CT scan, there was no evidence of hardware failure, and Plaintiff appeared to have developed good fusion mass. (Tr. 746, 755).

At the request of his attorney, Plaintiff underwent a consultative physical examination on December 29, 2010 by Dr. Steven G. McCloy. (Tr. 732-738). Plaintiff informed Dr. McCloy that

he was injured in a motorcycle accident a few years prior, which resulted in injuries to his left ankle and to his spine. (Tr. 732). He stated that his ankle was repaired, but he continued to experience back pain and his legs "would go out from under him." Id. Imaging studies and electrical studies revealed a narrowing in his spine and inflammation of the spinal cord. Id. Plaintiff relayed to Dr. McCloy that he had undergone spinal surgery on July 4, 2009. Id. Plaintiff told Dr. McCloy that since the surgery, he experienced only minimal improvement. Id. He reported daily back pain, which was treated with narcotics, and pain radiating down the back of his left leg. Plaintiff said that any movement caused him back pain. Id.

In addition to the history provided by Plaintiff, Dr. McCloy reviewed the medical records provided by Plaintiff's attorney. (Tr. 733-735). This documentation included emergency room treatment records from January 2008; an MRI of the lumbar spine from January 2009; a CT scan of the spine from June 2009; treatment notes from West Bay Orthopedics dated January-May, 2009; physical therapy records from February-May 2009; treatment notes from Dr. Sampath from June 30, 2009-July 6, 2009; and a radiograph of the spine dated June 30, 2009. (Tr. 733-734).

Upon examination, Dr. McCloy remarked that Plaintiff had flattening of the lumbar lordosis. (Tr. 735). Plaintiff could bend forward to 40 degrees and he could extend to one-third of the normal range. Id. Plaintiff's gait was antalgic and he walked with the assistance of a cane, but the cane was used for balance. Id. Dr. McCloy noted that Plaintiff was able to climb up onto the examining table and move on the examining table without assistance. Id. In the seated position, Plaintiff had normal deep tendon reflexes at both knees and the left ankle, but there was diminution of the right ankle jerk. Id. Perception was somewhat diminished in the calves. Id. Straight leg raising on the left

produced a pulling sensation in the lower back. (Tr. 736). In the supine position, Dr. McCloy noted a 2 centimeter difference in leg length, slightly longer on the left side. Id. Plaintiff had normal perception in the Sl and S2 dermatomes. Id. Tenderness was reported in the right sciatic notch and over both gluteus medius, but there was no tenderness noted over the coccyx or in the left sciatic notch. Id. Dr. McCloy diagnosed lumbar strain, spinal stenosis, chronic back pain, sciatica, status-post left tibia and fibular fracture and status-post metacarpal fracture. Id. Dr. McCloy opined that Plaintiff could not sit for more than ten minutes at a time without having to change position, and his abilities to lift and carry were limited because of his use of a cane. (Tr. 736-737). Dr. McCloy opined that Plaintiff was "a poor candidate for the competitive workplace." (Tr. 737).

State Agency medical consultant, Dr. Henry Laurelli, reviewed the medical evidence and rendered an assessment as to Plaintiff's physical RFC on August 12, 2009. (Tr. 287-294). Based on the record, Dr. Laurelli concluded that Plaintiff could lift ten pounds occasionally and less than ten pounds frequently, he could stand and/or walk for at least two hours in an eight-hour workday, and he could sit for about six hours in an eight-hour workday. (Tr. 288). Plaintiff could never climb ladders, ropes, or scaffolds, but he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. (Tr. 289). Dr. Laurelli did not assess any manipulative limitations, but he suggested that Plaintiff should avoid concentrated exposure to extreme cold and extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts and gases. (Tr. 291). Dr. Laurelli's assessment was affirmed by a second State Agency medical consultant, Dr. Yousef Georgy, on December 18, 2009. (Tr. 295).

Dr. McCloy completed a physical capacity evaluation form on December 29, 2010, in which he stated that Plaintiff could sit, stand, and walk up to one hour each and could work a total of three hours per day. (Tr. 738). Plaintiff could frequently lift up to five pounds and carry up to five pounds with one hand, he could occasionally lift and carry ten pounds and he could occasionally lift up to twenty pounds. Id. He could occasionally operate foot controls, repeatedly use his hands to grasp and perform fine manipulation, and occasionally use his arms to reach, push, pull and perform work over the shoulder. Id. Dr. McCloy suggested that Plaintiff could occasionally bend, but could never squat, kneel or crawl. Id. Plaintiff could never be exposed to unprotected heights; could occasionally be exposed to moving machinery, noise, vibration, dust, fumes and gases; and he could be exposed to extreme temperatures. Id.

Dr. Haj-Darwish, Plaintiff's internist, completed a disability questionnaire and a pain questionnaire on December 14, 2010. (Tr. 715-717). Dr. Haj-Darwish indicated that he had treated Plaintiff from May 2009 through April 2010 and that Plaintiff had a herniated disc status-post surgery. (Tr. 715). He wrote that Plaintiff complained of moderate back pain and that Plaintiff used Percocet for pain. (Tr. 716). Dr. Haj-Darwish concluded that Plaintiff could not sustain competitive employment on a full-time, ongoing basis and that his back pain would result in a moderately severe reduction in attention, concentration and productivity in a competitive work setting. (Tr. 716-717).

A.      **The ALJ's Decision**

The ALJ denied this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff's degenerative disc disease, back pain and obesity were "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 10). As to RFC, the ALJ determined that

Plaintiff was capable of performing a range of sedentary work.  Id.  Based on this RFC and testimony from the VE, the ALJ concluded at Step 5 that Plaintiff was not disabled because he could perform certain sedentary, unskilled jobs present in significant numbers in the economy.  (Tr. 14-15).

### B.    The ALJ Properly Evaluated the Medical Evidence

Plaintiff argues that remand is warranted because the ALJ misstated the facts in connection with his evaluation of Dr. McCloy's opinions and did not fully evaluate the opinions of Dr. Haj-Darwish.  Dr. McCloy examined Plaintiff at the request of his attorney on one occasion and issued a report on December 29, 2010, shortly before the ALJ hearing.  (See Ex. 30F).  The ALJ found Dr. McCloy's report to be "more akin to an advocacy opinion" for several articulated reasons and gave it "little weight."  (Tr. 13).  Dr. Haj-Darwish is an internist who saw Plaintiff for back pain from May 24, 2009 to April 1, 2010.  (Tr. 715).  He also completed disability and pain questionnaires on December 14, 2010 at the request of Plaintiff's attorney.  (Tr. 715-717).  The ALJ indicated that he was "not persuaded by Dr. Haj-Darwish's opinion" for several articulated reasons and "did not assign it the controlling weight ordinarily assigned to a treating physician's report commenting on the claimant's abilities."  (Tr. 12-13).

First, as to the ALJ's assessment of Dr. McCloy's opinion, Plaintiff has not shown any reversible error.  For instance, Plaintiff contends that the ALJ was inaccurate when he concluded that Dr. McCloy's conclusions were "based totally on Plaintiff's subjective complaints."[1]  (Tr. 13).

---

[1] It is also important to keep in mind that the ALJ did not find Plaintiff's subjective pain complaints to be fully credible because, inter alia, they were inconsistent with his "wide range of daily activities" and his holding "himself out as ready, willing and able to work" by collecting unemployment benefits until shortly before the ALJ hearing in early 2011.  (Tr. 11, 21).  The ALJ also accurately noted in October 2010 that Dr. Sampath, a treating neurosurgeon, found it "somewhat unclear why [Plaintiff] is having so much pain" given the lack of objective medical indicators.  (Tr. 11,

However, Plaintiff's argument is somewhat misleading because he has cherry-picked one of several reasons given by the ALJ for discrediting Dr. McCloy's opinions. The ALJ also found such opinions to be "conclusory," "against the weight of the record as a whole," "not supported by medically acceptable signs, symptoms, and/or laboratory findings" and "out of proportion to the objective evidence obtained during and for the course of treatment." Id. Thus, Plaintiff is wrong when he argues that the ALJ misstated the record when he indicated that Dr. McCloy's opinions were based "totally" on Plaintiff's subjective complaints.

It is clear from the ALJ's thorough discussion of Dr. McCloy's report that he considered the totality of the record in evaluating the report. The ALJ did not conclude that Plaintiff's subjective complaints were the only support for his back pain but rather that such complaints were the only support for the extreme degree of limitations reported by Plaintiff and accepted by Dr. McCloy. (Tr. 736-737). In fact, the ALJ concluded that Plaintiff's back impairment restricted him to a limited range of sedentary work with certain postural and other limitations. (Tr. 10). Further, this RFC finding is directly supported by the medical opinions of Dr. Laurelli (Ex. 9F) and Dr. Georgy (Ex. 10F) which were given "substantial weight" by the ALJ. (Tr. 13); see Rivera-Torres v. Sec'y of HHS, 837 F.2d 4, 5 (1st Cir. 1988) (the resolution of evidentiary conflicts is within the province of the ALJ).

Furthermore, the ALJ appropriately questioned why Dr. McCloy's December 2010 report failed to consider any medical records after July 6, 2009 including the 2010 records of Dr. Sampath, a treating neurosurgeon, (Ex. 33F) which reference the unremarkable results of post-surgery CT

746). Plaintiff has not challenged this adverse credibility determination.

-18-

scans and EMG/nerve conduction studies. (Tr. 13). These post-surgery findings would appear highly relevant, and Plaintiff offers no explanation as to why they were not mentioned or considered by Dr. McCloy.

Second, as to Dr. Haj-Darwish, Plaintiff's internist, Plaintiff argues that the ALJ failed to specify the weight he was giving to this doctor's opinions. Again, Plaintiff has not shown any reversible error on this point. While the ALJ did not specifically quantify how much weight he gave to Dr. Haj-Darwish's opinions, it is clear from the totality of his decision and his acceptance of the RFC opinions of Dr. Laurelli and Dr. Georgy that the ALJ gave no weight to Dr. Haj-Darwish's total disability opinion. (See Ex. 27F); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). The ALJ also accurately noted that Dr. Haj-Darwish's opinion (Ex. 27F) was conclusory in nature, failed to give specific disabling limitations, and is "an assessment of [Plaintiff's] ability to engage in basic work like activities, which is an opinion reserved to the Commissioner." (Tr. 12). In addition, the ALJ found discrepancies between Dr. Haj-Darwish's opinions and his actual treatment notes, as well as the rest of the medical evidence of record. (Tr. 12-13).

Moreover, Plaintiff has not shown that Dr. Haj-Darwish's opinions are subject to the treating physician rule. See 20 C.F.R. §§ 404.1527 and 416.927. The questionnaires completed by Dr. Haj-Darwish on December 14, 2010 generally conclude that Plaintiff's back pain precludes him from working. (Ex. 27F). The questionnaires do not specifically opine on functional limitations or RFC. Under 20 C.F.R. § 404.1527(e), the ultimate issue of disability, i.e., inability to work, is one reserved

to the Commissioner, and no special significance is given to the source of an opinion on such issues. 20 C.F.R. § 404.1527(e)(3). Thus, the ultimate opinion of Dr. Haj-Darwish in the questionnaire that Plaintiff is unable to work is simply not a medical opinion covered by the requirements of the treating physician rule. See Gadoury v. Astrue, C.A. No. 08-140S, 2009 WL 2762504 at *2 (D.R.I. Aug. 27, 2009).

While reasonable minds could differ as to the interpretation of this medical evidence, the issue presented in this administrative appeal is not whether this Court would have reached the same conclusion as did the ALJ. "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987)). Rather, the narrow issue presented is whether the ALJ's findings have adequate support in the record. Since they do in this case, there is no basis upon which to reject such findings. The ALJ thoroughly weighed the evidence in the context of the record as a whole and adequately explained his reasoning. Plaintiff has simply not shown the existence of reversible error in the ALJ's treatment of the conflicting medical evidence.

### C. Plaintiff Has Shown No Error Regarding the ALJ's Evaluation of His Need to Use a Cane

Plaintiff argues that the ALJ's RFC and Step 5 findings are flawed because they do not adequately consider his use of a cane. Plaintiff testified before the ALJ that he has been using a cane since his 2009 surgery but that it was not medically prescribed. (Tr. 22). In his decision, the ALJ stated that Plaintiff's "use of the cane to walk would not preclude performance of the enumerated positions." (Tr. 14). Plaintiff has shown no error in this conclusion.

First, as noted previously, the ALJ determined that Plaintiff's back impairment limited him to sedentary work. Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like "docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Such work also is usually done sitting but occasional walking and standing may be required. Id.

Second, the VE was present during the ALJ hearing when Plaintiff testified that he used a cane (Tr. 22) and the ALJ reminded the VE that Plaintiff "uses a cane" (Tr. 35) when he was questioned about vocational capacity. The VE opined that a claimant with Plaintiff's RFC could perform sedentary work in the field of "packaging, assembly and inspection work" such as printed circuit board assembly, inspector and surveillance system monitor. (Tr. 37). Plaintiff's counsel examined the VE and did not inquire about whether Plaintiff's use of a cane would preclude any or all of this work. Thus, it is reasonable to assume that Plaintiff's counsel did not ask such questions because it was clear that the VE was aware of Plaintiff's use of a cane and necessarily considered that fact in rendering his opinion. (See Tr. 38-39).

Furthermore, Plaintiff has not pointed to any evidence of record suggesting that his use of a cane would preclude the sedentary work identified by the VE. See Juraska v. Astrue, Civil No. 10-cv-596-PB, 2011 WL 5403225 at *7 (D.N.H. Nov. 8, 2011) (holding that a claimant's use of a cane did not preclude work at the sedentary level requiring occasional standing and walking); Social Security Ruling 96-9p ("an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.") (emphasis added). The record here shows

that the VE was aware of Plaintiff's use of a cane and clearly opined as to the ability to perform certain, identified sedentary jobs. Plaintiff has shown no error in this regard.

## VI.     CONCLUSION

For the reasons discussed herein, I recommend that Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be GRANTED and that Plaintiff's Motion to Reverse with a Remand for a Rehearing of the Commissioner's Final Decision (Document No. 9) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 27, 2012